TODD KIM, Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

JOSEPH W. CRUSHAM, Trial Attorney (CA Bar No. 324764)
Wildlife & Marine Resources Section
YOUNG A. KANG, Trial Attorney (FL Bar No. 1025505)
Natural Resources Section
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044-7611
Phone: (202) 307-1145 (Crusham)
Email: joseph.crusham@usdoj.gov
Phone: (202) 514-2415 (Kang)
Email: young.kang@usdoj.gov

*Attorneys for Federal Defendants*

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEVADA

| | |
|---|---|
| LAURA LEIGH, individually, and WILD HORSE EDUCATION, a non-profit corporation,<br><br>     *Plaintiffs*,<br><br>                         v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR, BUREAU OF LAND MANAGEMENT, TRACY STONE-MANNING, Director of the Bureau of Land Management, and JON RABY, Nevada State Director of the Bureau of Land Management,<br><br>     *Federal Defendants*. | Case No. 3:23-cv-00568-ART-CSD<br><br>**FEDERAL DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPLETE AND SUPPLEMENT THE RECORD AND REQUEST FOR JUDICIAL NOTICE [ECF NO. 27]** |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................ 1

II. LEGAL BACKGROUND................................................................. 2

A. The Wild Free-Roaming Horses and Burros Act ("Wild Horse Act") ............................. 2

B. National Environmental Policy Act ("NEPA")................................................... 2

III. LEGAL STANDARD ....................................................................... 3

A. Completing the Record ....................................................................... 5

B. Supplementing the Record .................................................................. 6

C. Judicial Notice............................................................................... 6

IV. ARGUMENT ................................................................................... 7

A. The Court Should Reject Plaintiffs' Overbroad, Categorical Requests............................ 7

B. Plaintiffs Fail to Show that Completion or Supplementation of the Record to Include Additional AML Documents is Warranted................................. 9

C. Plaintiffs Fail to Show That Supplementation or Completion of the Record to Include Additional HMAP-Related Documents is Warranted. ........................................ 11

i. Plaintiffs Have Not Shown Supplementation of the Record Is Necessary for Their  HMAP-Related Failure to Act Claims. ................................. 11

ii. Plaintiffs Fail to Show the Record Should Be Supplemented or Completed to Include Any Documents Referenced by the Stone Cabin HMAP. ............................... 16

D. Plaintiffs Fail to Show that Completion or Supplementation of the Record to Include Additional Tonopah RMP-Related Documents is Warranted. ........................... 20

E. Plaintiffs' Alternative Request for Judicial Notice Should Be Denied. ........................... 21

V. CONCLUSION................................................................................. 22

i

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Alegre v. United States*,
   No. 16-CV-2442-AJB-KSC, 2021 WL 4934982 (S.D. Cal. July 29, 2021)............................ 8

*Am. Horse Prot. Ass'n, Inc. v. Watt*,
   694 F.2d 1310 (D.C. Cir. 1982) ................................................................................................ 2

*Animal Def. Council v. Hodel*,
   840 F.2d 1432 (1988) ................................................................................................................ 4

*ASSE Int'l v. Kerry*,
   Case No: SACV 14-00534 CJC(JPRx), 2018 WL 3326687 (C.D. Cal. Jan. 3, 2018) ............ 4

*Bar MK Ranches v. Yuetter*,
   994 F.2d 735 (10th Cir. 1993) .................................................................................................. 5

*Bartell Ranch LLC v. McCullough, No. 3-21-CV-00080-MMD-CLB*,
   2021 WL 6118738 (D. Nev. Dec. 27, 2021) ....................................................................... 8, 21

*Bruce v. Azar*,
   389 F. Supp. 3d 716 (N.D. Cal. 2019) .................................................................................... 5

*Bundorf v. Jewell*,
   142 F. Supp. 3d 1138 (D. Nev. 2015) .................................................................................... 15

*Camp v. Pitts*,
   411 U.S. 138 (1973).................................................................................................................. 17

*Citizens to Preserve Overton Park v. Volpe*,
   401 U.S. 402 (1971).................................................................................................................. 3

*City of Duluth v. Jewell*,
   968 F. Supp. 2d 281 (D.D.C. 2013) ......................................................................................... 8

*City of Sausalito v. O'Neill*,
   386 F.3d 1186 (9th Cir. 2004) ................................................................................................ 21

*Dallas Safari Club v. Bernhardt*,
   518 F. Supp. 3d 535 (D.D.C. 2021) .................................................................................. 12, 13

*Delgadillo v. Kijakazi*,
   No. 20-56211, 2022 WL 301548 (9th Cir. Feb. 1, 2022) ............................................. 6, 7, 21

*Dep't of Transp. v. Pub. Citizen*,
   541 U.S. 752 (2004) ................................................................................. 3

*Eruchalu v. US Bank Nat. Ass'n*,
   No. 2:15-CV-946 JCM, 2015 WL 3609909 (D. Nev. June 9, 2015) ..................................... 22

*Fence Creek Cattle Co. v. U.S. Forest Serv.*,
   602 F.3d 1125 (9th Cir. 2010) .............................................. 6, 11, 20, 21

*Fla. Power & Light Co. v. Lorion*,
   470 U.S. 729 (1985) .......................................................................... 4, 6

*Friends of Animals v. Silvey*,
   353 F. Supp. 3d 991 (D. Nev. 2018) ...................................................... 2, 9

*Friends of Animals v. Sparks*,
   200 F. Supp. 3d 1114 (D. Mont. 2016) ...................................................... 14

*Friends of Animals v. U.S. BLM*,
   No. 16-CV-0199, 2017 WL 5247929 (D. Wyo. Mar. 20, 2017) ............................ 9

*Fund for Animals, Inc. v. BLM*,
   460 F.3d 13 (D.C. Cir. 2006) ................................................................ 2

*In Def. of Animals, Dreamcatcher Wild Horse & Burro Sanctuary v. U.S. Dep't of Interior*,
   751 F.3d 1054 (9th Cir. 2014) .......................................................... 3, 9

*Lands Council v. Powell*,
   395 F.3d 1019 (9th Cir. 2005) ........................................................ passim

*Leigh v. Raby*,
   No. 3:22-cv-00034-MMD-CLB, 2023 WL 2717327 (D. Nev. Mar. 30, 2023) ......... 12, 13, 14

*Leigh v. Raby*,
   No. 3:22-CV-00034-MMD-CLB, 2024 WL 1345297 (D. Nev. Mar. 28, 2024) ................... 15

*Marcum v. Salazar*,
   751 F. Supp. 2d 74 (D.D.C. 2010) ...................................................... 10, 16

*Marsh v. Or. Nat. Res. Council*,
   490 U.S. 360 (1989) .......................................................................... 3

*Moore v. Palmer*,
   No. 22-CV-539 JLS (LR), 2023 WL 2593964 (S.D. Cal. Mar. 20, 2023) .................... 21, 22

iii

*Native Ecosystems Council v. U.S. Forest Serv.*,
    428 F.3d 1233 (9th Cir. 2005) ...................................................... 3

*Norton v. S. Utah Wilderness All.*,
    542 U.S. 55 (2004) ...................................................... 14, 17

*Nw. Env't Advocs. v. U.S. Fish & Wildlife Serv.*,
    No. 3:18-CV-01420-AC, 2019 WL 6977406 (D. Or. Dec. 20, 2019) ................................ 5, 6

*Oceana v. Pritzker*,
    No. 16-cv-06784-LHK (SVK), 2017 WL 2670733 (N.D. Cal. June 21, 2017) ......... 6, 17, 19

*Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs*,
    448 F. Supp. 2d 1 (D.D.C. 2006) ...................................................... 4

*Pinnacle Armor, Inc. v. United States*,
    923 F. Supp. 2d 1226 (E.D. Cal. 2013) ...................................................... 16

*Portland Audubon Soc'y v. Endangered Species Comm.*,
    984 F.2d 1534 (9th Cir. 1993) ...................................................... 4

*R.T. Vanderbilt Co. v. Babbitt*,
    113 F.3d 1061 (9th Cir. 1997) ...................................................... 12

*Robertson v. Methow Valley Citizens Council*,
    490 U.S. 332 (1989) ...................................................... 2, 3

*Rybachek v. EPA*,
    904 F.2d 1276 (9th Cir. 1990) ...................................................... 7

*Safari Club Int'l v. Jewell*,
    111 F. Supp. 3d 1 (D.D.C. 2015) ...................................................... 5, 6

*Safari Club Int'l v. Jewell*,
    No. CV-16-00094-TUC-JGZ, 2016 WL 7785452 (D. Ariz. July 7, 2016) ................... passim

*San Francisco BayKeeper v. Whitman*,
    297 F.3d 877 (9th Cir. 2002) ...................................................... 15

*San Luis & Delta-Mendota Water Auth. v. Locke*,
    776 F.3d 971 (9th Cir. 2014) ...................................................... 4

*Sierra Club v. U.S. Department of Transportation*,
    245 F. Supp. 2d 1109 (D. Nev. 2003) ...................................................... 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Stevens v. U.S. Army Corps of Eng'rs*,
  No. 2:21-CV-01423-RAJ, 2023 WL 2138347 (W.D. Wash. Feb. 21, 2023) ........... 10, 16, 20

*Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*,
  100 F.3d 1443 (9th Cir. 1996) ................................................................. 6

*Thompson v. U.S. Dep't of Labor*,
  885 F.2d 551 (9th Cir. 1989) ................................................................. 4

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council*,
  435 U.S. 519 (1978) ................................................................. 4

*Wild Rockies v. Probert*,
  412 F. Supp. 3d 1188 (D. Mont. 2019) ................................................................. 7

*WildEarth Guardians v. U.S. Forest Serv.*,
  713 F. Supp. 2d 1243 (D. Colo. 2010) ................................................................. 4

*Winnemem Wintu Tribe v. U.S. Forest Serv.*,
  No. 2:09-CV-01072-KJM-KJN, 2014 WL 3689699 (E.D. Cal. July 24, 2014) ..................... 5

**STATUTES**

5 U.S.C.  § 706 ................................................................. 3, 13

5 U.S.C.  § 701–06 ................................................................. 3

16 U.S.C. § 1332(c) ................................................................. 2

16 U.S.C. § 1333(a) ................................................................. 2, 13

16 U.S.C. § 1333(b)(2) ................................................................. 2

28 U.S.C. § 2401(a) ................................................................. 9

42 U.S.C. § 4321 ................................................................. 3

42 U.S.C. § 4332(C) ................................................................. 3

**RULES**

Fed. R. Evid. 201(b) ................................................................. 6

1

2

**REGULATIONS**

3

40 C.F.R. § 1501.1 ................................................................................................ 3

4

40 C.F.R. § 1501.4(e) ........................................................................................... 3

5

6

40 C.F.R. § 1502.3 ................................................................................................ 3

7

40 C.F.R. § 1508.9(a) ........................................................................................... 3

8

40 C.F.R. § 1508.9(a)(l) ....................................................................................... 3

9

40 C.F.R. § 1508.1(l) ............................................................................................ 3

10

43 C.F.R. § 4710.3-1 ............................................................................................ 2

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.     __INTRODUCTION__

Federal Defendants lodged the Bureau of Land Management's ("BLM's") certified administrative record on April 17, 2024. ECF No. 26. The lodged record contains 237 documents and spans over 9,000 pages, including the focal point for this case: BLM's 206-page Wild Horse Gather Plan/Environmental Assessment for the Stone Cabin Complex ("Stone Cabin Gather EA"). SC_6182–6387. As part of the informal conferral process on record disputes required by the scheduling order, ECF No. 23 at 2, Federal Defendants agreed to include 12 more documents at Plaintiffs' request. Unsatisfied, Plaintiffs now move to "complete and supplement" the record to include a vast array of documents and categories of documents. ECF No. 27 at 4.[1]

Plaintiffs spend much of their Motion prematurely arguing the merits of their claims (and claims they have not pled). But the issues before the Court are narrow. To show completion of the record is required—i.e., that BLM considered documents but did not include them in the record—Plaintiffs must overcome the strong presumption that BLM's record is complete with clear evidence. They have not done so. To show supplementation of the record with extra-record documents is required, they must demonstrate that one of the four narrowly construed exceptions to record review applies. They have not done this either. Indeed, many of Plaintiffs' broad demands are more like discovery requests than proper requests to add specific documents to BLM's record. *Cf.* ECF No. 21 at 5 (Plaintiffs agreeing "this case will be resolved through judicial review of BLM's administrative record" and disclaiming intent to seek discovery).

Moreover, Plaintiffs' alternative request for judicial notice should be denied because judicial notice cannot be used to circumvent the rules governing record review, and Plaintiffs unnecessarily ask the Court to take notice of legal authority.

---

[1] The Scheduling Order allows Plaintiffs to move for inclusion only of materials they "previously identified to Federal Defendants as part of the conferral process." ECF No. 23 at 2 & n.2. Plaintiffs did not raise with Federal Defendants during the conferral process their broad demands for "all documents related to BLM's decision not to create an HMAP for the Stone Cabin Complex or the Saulsbury HMA" or "all documents related to BLM's decision not to conduct the studies and assessment mandated by the 1983 HMAP." ECF 27 at 21; *see* Ex. 1 [Plaintiffs' Administrative Record Letter]; Ex. 2 [Federal Defendants' Response Letter]. The Court should deny these requests on this basis. Even if the Court considers them, they fail, as explained below.

Thus, for these reasons and as explained below, the Court should deny Plaintiffs' Motion.

## II.   LEGAL BACKGROUND

### A.   The Wild Free-Roaming Horses and Burros Act ("Wild Horse Act")

In 1971, Congress passed the Wild Horse Act, 16 U.S.C. §§ 1331 *et seq.*, which directs the Secretary of the Interior to provide for the protection and management of wild horses "in the area where presently found, as an integral part of the natural system of the public lands." *Id.* But after only a few years, the wild horse population had ballooned, "and action [was] needed to prevent a successful program from exceeding its goals and causing animal habitat destruction." *Am. Horse Prot. Ass'n, Inc. v. Watt*, 694 F.2d 1310, 1316 (D.C. Cir. 1982) (citation omitted). Thus, in 1978, Congress passed amendments to the Wild Horse Act, which gave the Secretary greater authority and discretion to manage and remove excess horses. *Id.* at 1316–18.

Section 3 of the Wild Horse Act directs the Secretary to manage wild horses and burros "to achieve and maintain a thriving natural ecological balance on the public lands." 16 U.S.C. § 1333(a). "The Bureau (as the Secretary's delegate) carries out this function in localized 'herd management areas' ('HMAs')[.]" *Fund for Animals, Inc. v. BLM*, 460 F.3d 13, 15 (D.C. Cir. 2006); *see* 16 U.S.C. § 1332(c); 43 C.F.R. § 4710.3-1. In each HMA, BLM typically establishes an Appropriate Management Level ("AML") range. *See Friends of Animals v. Silvey*, 353 F. Supp. 3d 991, 1008 (D. Nev. 2018), *aff'd*, 820 F. App'x 513 (9th Cir. 2020) ("BLM is given great deference [] in establishing AMLs…"). If BLM determines there is an overpopulation of wild horses and burros and that action is necessary to remove them, BLM must immediately act to remove the excess animals to achieve AML. 16 U.S.C. § 1333(b)(2).

### B.   National Environmental Policy Act ("NEPA")

NEPA serves the dual purpose of informing agency decision-makers of the environmental effects of proposed federal actions and ensuring that relevant information is made available to the public so it "may also play a role in both the decisionmaking process and the implementation of that decision." *See Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989). The intent is to focus the attention of agencies and the public on a proposed action so its consequences

may be considered before implementation. 42 U.S.C. § 4321; 40 C.F.R. § 1501.1; *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 371 (1989). NEPA does not impose any substantive obligations but requires an agency to take a "hard look" at the potential environmental consequences of its decision-making. *Robertson*, 490 U.S. at 350.

To help federal agencies meet these goals, NEPA requires preparation of an environmental impact statement ("EIS") for "major Federal actions significantly affecting the quality of the human environment . . . ." 42 U.S.C. § 4332(C); 40 C.F.R. § 1502.3. But not every major Federal action requires preparation of an EIS. If an agency is unsure of the potential significance of the environmental impacts its proposed action may have, it may prepare an environmental assessment ("EA"), which is a "concise public document" that "[b]riefly provide[s] sufficient evidence and analysis for determining whether to prepare an [EIS]." *Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 757 (2004) (quoting 40 C.F.R. § 1508.9(a)).

If, after preparing an EA, an agency finds that its proposed action will not significantly affect the human environment, it may issue a finding of no significant impact ("FONSI") rather than prepare an EIS. *Native Ecosystems Council v. U.S. Forest Serv.*, 428 F.3d 1233, 1239 (9th Cir. 2005) (citing 40 C.F.R. § 1508.9(a)(1)); *see also* 40 C.F.R. § 1501.4(e). A FONSI "briefly present[s] the reasons why an action…will not have a significant effect on the human environment and for which an [EIS] therefore will not be prepared." 40 C.F.R. § 1508.1(l).

## III.    LEGAL STANDARD

Wild Horse Act and NEPA claims are reviewed under the judicial review provisions of the Administrative Procedure Act ("APA"). 5 U.S.C. §§ 701–06; *see In Def. of Animals, Dreamcatcher Wild Horse & Burro Sanctuary v. U.S. Dep't of Interior*, 751 F.3d 1054, 1061 (9th Cir. 2014). Under the APA, a court's review is based on the whole administrative record the agency presents to the reviewing court. 5 U.S.C. § 706 (noting that in reviewing agency action "the court shall review the whole record or those parts of it cited by a party"). The "whole record" means the full administrative record compiled by the agency in support of the decision at issue, *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 419–420 (1971), and "includes

everything that was before the agency pertaining to the merits of its decision." *Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993) (citation omitted). This includes "all documents and materials directly or indirectly considered by agency decision-makers . . . [.]" *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (citation omitted).

The "focal point" for "judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985) (citation omitted); *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1436–37 (1988) (same), *amended on other grounds*, 867 F.2d 1244 (9th Cir. 1989). This rule is intended to ensure that a reviewing court affords adequate deference to the agency's expertise, experience, and processes. *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 992 (9th Cir. 2014).

The record does not encompass "any relevant document contained in an agency's fil[ing] cabinets[.]" *WildEarth Guardians v. U.S. Forest Serv.*, 713 F. Supp. 2d 1243, 1255 (D. Colo. 2010); *see also ASSE Int'l v. Kerry*, Case No: SACV 14-00534 CJC(JPRx), 2018 WL 3326687, at *2 (C.D. Cal. Jan. 3, 2018) ("[T]he 'whole record' is not everything before the agency."). As one court explained:

> Limiting review of the administrative record to only what the agency decisionmakers directly or indirectly considered is important. A broad application of the phrase 'before the agency' would undermine the value of judicial review: [I]nterpreting the word 'before' so broadly as to encompass any potentially relevant document existing within the agency or in the hands of a third party would render judicial review meaningless.

*Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs,* 448 F. Supp. 2d 1, 5 (D.D.C. 2006) (citation omitted). Indeed, the Supreme Court has recognized that limiting judicial review to the administrative record is necessary to prevent courts from exercising sweeping de novo review of agency action. *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council*, 435 U.S. 519, 549 (1978). The Ninth Circuit has likewise confirmed that, to maintain the proper

deference to agency decision-making, the standard of review cannot be severed from the scope of review:

> Were the federal courts routinely or liberally to admit new evidence when reviewing agency decisions, it would be obvious that the federal courts would be proceeding, in effect, de novo rather than with the proper deference to agency processes, expertise, and decision-making.

*Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005).

### A. Completing the Record

A motion to complete the record is granted only upon a showing that "an agency relied on documents or materials not included in the administrative record." *Nw. Env't Advocs. v. U.S. Fish & Wildlife Serv.*, No. 3:18-CV-01420-AC, 2019 WL 6977406, at *5 (D. Or. Dec. 20, 2019). "[A]dding material to the volume of documents the agency considered . . . is the exception, not the rule." *Safari Club Int'l v. Jewell*, 111 F. Supp. 3d 1, 4 (D.D.C. 2015) (citation omitted); *Bruce v. Azar*, 389 F. Supp. 3d 716, 725 (N.D. Cal. 2019), *aff'd*, 826 F. App'x 643 (9th Cir. 2020) ("[C]ourts presume administrative records are complete[.]"). Thus, an agency's designation of the administrative record is entitled to a "strong presumption of regularity"—a presumption which a challenging party must overcome by "clear evidence." *Safari Club Int'l v. Jewell*, No. CV-16-00094-TUC-JGZ, 2016 WL 7785452, at *2 (D. Ariz. July 7, 2016); *see also Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993) ("The court assumes the agency properly designated the Administrative Record absent clear evidence to the contrary."). To meet the clear evidence standard, a challenging party must (1) "identify reasonable, non-speculative grounds for the belief that the documents were considered by the agency and not included in the record," and (2) "identify the materials allegedly omitted from the record with sufficient specificity, as opposed to merely proffering broad categories of documents and data that are 'likely' to exist as a result of other documents that are included in the administrative record[.]" *Winnemem Wintu Tribe v. U.S. Forest Serv.*, No. 2:09-CV-01072-KJM-KJN, 2014 WL 3689699, at *10 (E.D. Cal. July 24, 2014) (citations omitted).

### B. Supplementing the Record

"Supplementation" or inclusion of extra-record evidence means "adding material outside of or in addition to the administrative record that was not necessarily considered by the agency." *Safari Club*, 111 F. Supp. 3d at 4 (citation omitted); *see also Nw. Env't Advocs.*, 2019 WL 6977406, at *4–11 (explaining distinctions between seeking to complete and supplement record).

"For extra-record material to be considered," a party must first show that "the [existing] record is inadequate" for review. *Oceana v. Pritzker*, No. 16-cv-06784-LHK (SVK), 2017 WL 2670733, at *7 (N.D. Cal. June 21, 2017). This is a "heavy burden" and one that requires a showing that additional materials "are necessary to adequately review" an agency's decision. *Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010).

The Ninth Circuit recognizes four narrow circumstances under which a reviewing court may consider extra-record evidence if a challenging party shows:

> (1) admission is necessary to determine "whether the agency has considered all relevant factors and has explained its decision," (2) if "the agency has relied on documents not in the record," (3) "when supplementing the record is necessary to explain technical terms or complex subject matter," or (4) "when plaintiffs make a showing of agency bad faith."

*Lands Council*, 395 F.3d at 1030 (quoting *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996)). These exceptions are strictly construed, as their use would otherwise "undermine the general rule" limiting judicial review under the APA to the administrative record. *Id.* at 1030. Thus, extra-record evidence may be considered only "in rare circumstances[.]" *Fla. Power & Light*, 470 U.S. at 744.

### C. Judicial Notice

Under Federal Rule of Evidence 201, courts may take judicial notice of "adjudicative" facts "not subject to reasonable dispute." Fed. R. Evid. 201(b). But—in a case seeking review of agency action under the APA—a request for judicial notice "effectively ask[s] to supplement the record." *Delgadillo v. Kijakazi*, No. 20-56211, 2022 WL 301548, at *1 (9th Cir. Feb. 1, 2022). Thus, "[a] party cannot circumvent the rules governing administrative record supplementation by asking for judicial notice." *Id.* (collecting cases); *see also All. for Wild Rockies v. Probert*, 412 F.

Supp. 3d 1188, 1198 (D. Mont. 2019) (same); *Rybachek v. EPA*, 904 F.2d 1276, 1296 n.25 (9th Cir. 1990) (construing a request for judicial notice as a motion to supplement the record and rejecting the motion because "[j]udicial review of agency actions should generally be confined to the original record upon which the actions were based").

**IV.   ARGUMENT**

    **A.  The Court Should Reject Plaintiffs' Overbroad, Categorical Requests.**

At the outset, many of Plaintiffs' requests are defective because they seek completion or supplementation of the record with broad categories of materials instead of specific documents. For example, Plaintiffs ask the Court to order BLM to include:

- "[A]ny evidence, analysis or scientific studies that have been used to establish or re-calculate the current AMLs for the Stone Cabin Complex." ECF No. 27 at 13.

- "[A]ny evidence that BLM actually conducted the numerous assessments and studies" which Plaintiffs allege are "required" by BLM's 1983 Herd Management Area Plan for the Stone Cabin HMA ("Stone Cabin HMAP"). *Id.* at 15.

- "Any assessments or studies conducted pursuant to the [Tonopah Resource Management Plan ("Tonopah RMP")]." *Id.* at 19.

- "[A]ll documents related to BLM's decision not to create an HMAP for the Stone Cabin Complex or the Saulsbury HMA." *Id.* at 21.

- "[A]ll documents addressing why BLM has not updated the [Stone Cabin HMAP], including documents related to BLM's decision to update the [Stone Cabin HMAP] in 2016-2017 when Plaintiff Laura Leigh volunteered with BLM, and any documents related to the BLM's decision to abandon the update[.]" *Id.*

- "[A]ll documents related to BLM's decision not to conduct the studies and assessments mandated by the [Stone Cabin HMAP]." *Id.*

Such requests violate the principle that "Plaintiff must identify the materials allegedly omitted from the record with sufficient specificity, as opposed to merely proffering broad categories of documents and data that are 'likely' to exist as a result of other documents that are

included in the administrative record." *City of Duluth v. Jewell*, 968 F. Supp. 2d 281, 288 (D.D.C. 2013). Indeed, as for completing the record, such broad requests fail because "having failed to identify the requested documents, Plaintiffs cannot show that any source considered by the agency relies so heavily on a particular document that the document might fairly be said to have been indirectly considered by the decision maker." *Safari Club*, 2016 WL 7785452, at *3; *see also id.* ("Plaintiffs themselves seem unaware of the number, titles, or content of any of the documents they request[.]"). Said another way, Plaintiffs cannot present "clear evidence" that BLM considered any of the broad categories of unidentified documents they request and therefore cannot meet their "heavy burden" to show completion is warranted. *Id.* at *4; *see also Bartell Ranch LLC v. McCullough,* No. 3-21-CV-00080-MMD-CLB, 2021 WL 6118738, at *4 (D. Nev. Dec. 27, 2021) (denying request for completion of record where plaintiffs "did not specifically identify documents falling within these categories that they contend BLM considered in approving the project, instead merely speculating that such documents likely exist").

Nor are Plaintiffs' categorical demands proper supplementation requests. Plaintiffs cannot supplement the record with "general categor[ies] of documents," as they do not identify "the documents in question" or give "any indication of their content, scope, or relevance." *See Safari Club*, 2016 WL 7785452, at *6. Put simply, the Court should not "sanction the blind admission" of vast categories of extra-record documents because Plaintiffs cannot show that such unidentified materials meet any of the four "narrowly construed" exceptions to record review. *See id.*; *Lands Council*, 395 F.3d at 1030; *see also Alegre v. United States,* No. 16-CV-2442-AJB-KSC, 2021 WL 4934982, at *5–6 (S.D. Cal. July 29, 2021) (denying request for supplementation where "Plaintiffs merely categorize the documents in broad categories without explaining what the documents purport to be, or how they fall into an appropriate exception").

Even if the Court considers Plaintiffs' deficient categorical requests, they fail along with their requests for specific documents, as explained in detail below.

1

2

### B. Plaintiffs Fail to Show that Completion or Supplementation of the Record to Include Additional AML Documents is Warranted.

Plaintiffs do not establish that it is necessary to supplement or complete the record with "[d]ocuments describing how the current AMLs were determined" for the Stone Cabin Complex.[2] ECF No. 27 at 11. Specifically, Plaintiffs seek to complete or supplement the record with a 1996 Final Multiple Use Decision, and to broadly supplement the record with "any evidence, analysis or scientific studies that have been used to establish or re-calculate the current AMLs for the Stone Cabin Complex." *Id.* at 13.

Plaintiffs seek these AML-related documents to support their fifth claim, which challenges BLM's Stone Cabin Gather EA under NEPA and APA § 706(2). *See id.* at 11; ECF No. 1 ¶¶ 112–116. A threshold defect in their request is that the Stone Cabin Gather EA does not set or adjust AML—it uses AMLs that were previously established. SC_6186–89; *see In Def. of Animals*, 751 F.3d at 1064 n.13 ("[N]othing in the [Wild Horse] Act requires the BLM to determine new AMLs based on current conditions every time the BLM decides to take action to restore the already-established AMLs."); *Silvey*, 353 F. Supp. 3d at 1008 ("BLM's reliance on the previously approved and established AMLs [for gather decision] was not arbitrary and capricious."); *Friends of Animals v. U.S. BLM*, No. 16-CV-0199, 2017 WL 5247929, at *8 (D. Wyo. Mar. 20, 2017) ("[T]he gather document is not the appropriate mechanism for adjusting the AML of an HMA[.]").

Put simply, if Plaintiffs sought to challenge BLM's setting of AML for Stone Cabin Complex, the Stone Cabin Gather EA is the wrong target. Instead, they should have challenged the 1997 Tonopah RMP, which reaffirmed the AMLs for the Stone Cabin Complex set by the 1992 "Consent Decision" and 1996 Final Multiple Use Decision. *See* SC_0020. But any such challenge would almost certainly be barred by the six-year statute of limitations. *See* 28 U.S.C. § 2401(a). Thus, because documents related to BLM's setting of AML are irrelevant to any issues in this case—and the Court should not countenance Plaintiffs' attempt to circumvent the statute

---

[2] The Stone Cabin Complex includes the Stone Cabin HMA and the Saulsbury HMA. SC_6185.

of limitations—the Court should reject Plaintiffs' request outright. Nonetheless, Plaintiffs have failed to show completion or supplementation is appropriate.

As to the 1996 Final Multiple Use Decision, Plaintiffs have not put forward "clear evidence" that BLM considered it in issuing the Stone Cabin Gather EA, as required to rebut the "strong presumption" that BLM properly designated the record. *Safari Club*, 2016 WL 7785452, at *2. Plaintiffs argue that because the Stone Cabin Gather EA cites the 1996 Final Multiple Use Decision, it was "before" BLM. ECF No. 27 at 13. But, as explained, the Stone Cabin EA does not set or adjust AML. Thus, BLM did not directly or indirectly consider the documents that originally set AML for the Stone Cabin Complex—i.e., the 1992 Consent Decision or 1996 Final Multiple Use Decision.[3] The Stone Cabin Gather EA merely references these documents for narrative purposes. And courts have rejected Plaintiffs' implicit claim that the 1996 Final Multiple Use Decision is part of the record because it is cited in the Stone Cabin Gather EA. *See Stevens v. U.S. Army Corps of Eng'rs*, No. 2:21-CV-01423-RAJ, 2023 WL 2138347, at *2 (W.D. Wash. Feb. 21, 2023) ("Courts in the Ninth Circuit have continuously held that the 'consideration through citation' argument 'stretches the chain of indirect causation to its breaking point and cannot be a basis for compelling completion of an Administrative Record.'"); *see also Marcum v. Salazar*, 751 F. Supp. 2d 74, 80 (D.D.C. 2010) ("[R]eferences to documents in the administrative record do not prove that that the documents were 'before' the deciding agency.").

Nor have Plaintiffs shown that supplementation is warranted. The Ninth Circuit has explained that courts should not "routinely or liberally" allow supplementation so that the exceptions do not undermine the general rule that review of agency action be limited to the administrative record. *Lands Council*, 395 F.3d at 1029. Plaintiffs merely intone that documents related to the setting of AMLs are "necessary" to various arguments, but do not actually

---

[3] While the 1992 Consent Decision is in the record, it is included only because it was submitted as an attachment to a comment, not because BLM considered it in the first instance. *See* SC_1428.

1  demonstrate that is the case.[4] This is especially true since the action they challenge does not set

2  or adjust AMLs, and the record includes the Tonopah RMP, which reaffirmed the AMLs relevant

3  to the gather decision at issue. Moreover, if Plaintiffs wish to argue that BLM overlooked some

4  factor related to AML, they can point to the absence of such analysis in the record. *See* ECF No.

5  27 at 13.[5] In other words, Plaintiffs can make their misguided AML challenge—and the Court

6  can reject it—on the existing record. Thus, Plaintiffs have not met their "heavy burden" to show

7  the existing record is inadequate for judicial review. *Fence Creek*, 602 F.3d at 1131.

8      Accordingly, the Court should deny Plaintiffs' AML-related requests.

9      **C.  Plaintiffs Fail to Show That Supplementation or Completion of the Record to Include Additional HMAP-Related Documents is Warranted.**

10      Next, Plaintiffs seek to add a wide swath of "[d]ocuments, studies, and assessments"

11  regarding the Stone Cabin HMAP to the record. ECF No. 27 at 14; *see* SC_9270. Relatedly,

12  Plaintiffs seek to supplement the record with broad categories of documents "addressing" their

13  failure to act claims, which all relate to alleged issues with BLM not issuing, updating, or

14  following HMAPs. ECF No. 27 at 20–21.

15      As explained below, Plaintiffs do not meet their heavy burden to show the record should

16  be supplemented or completed with any HMAP-related documents.

17      **i.  Plaintiffs Have Not Shown Supplementation of the Record Is Necessary for Their HMAP-Related Failure to Act Claims.**

18

19      Though they place their HMAP-related demands in separate sections of their Motion, the

20

21  ────────────

[4] Although Plaintiffs request supplementation of these documents for their fifth cause of action, brought under Section 706(2), they also claim that supplementation is necessary for an unpled Section 706(1) claim that action has been "unlawfully withheld or unreasonably delayed." ECF No. 27 at 13-14. Plaintiffs have not brought a claim to compel BLM to update AML. *Id.* at 11 (Plaintiffs describing their claims); *see* also ECF No. 1 at 16-22. And as explained below, even if Plaintiffs did plead this type of claim, it would overlap with their Section 706(2) claim, and supplementation of the record would be inappropriate.

[5] Plaintiffs claim that they need broad supplementation with unidentified AML documents "to determine whether BLM considered all relevant factors," ECF No. 27 at 13, but courts "have expressly rejected the use of the 'relevant factors' test as grounds for the admission of extra-record evidence where the plaintiff argues that the new evidence *should* have been considered by the agency." *See Safari Club*, 2016 WL 7785452, at *5.

demands each depend, at least in part, on Plaintiffs' assertion that the record should be supplemented because they bring failure to act claims. *See* ECF No. 27 at 14–15 (arguing for supplementation with documents related to Stone Cabin HMAP to "establish what obligations BLM was legally committed to"); *id.* at 20–21 (seeking HMAP-related documents related to "failure to act" claim and claiming court is not limited to record). This argument fails.

Plaintiffs first four claims allege that it was unlawful for BLM to not prepare, update, or comply with HMAPs before issuing the Stone Cabin Gather EA. *See id.* at 8–9 (Plaintiffs describing first four claims as based on allegations that BLM has not issued a Saulsbury HMAP, updated the Stone Cabin HMAP, or achieved the Stone Cabin HMAP's "objectives" prior to issuing the Stone Cabin Gather EA); ECF No. 1 ¶¶ 77–111. Although each claim hinges on the same theories of violation, only the second[6] is cast as a "failure to act" claim under APA § 706(1). *Id.* ¶ 86. Claims 3 and 4 are brought under APA § 706(2). *Id.* ¶¶ 94, 103.

Courts have held that it is improper to expand the record for Section 706(1) claims in these circumstances because it would "have the court apply different standards of review to different claims, even though they are premised on the same theory of violation." *Dallas Safari Club v. Bernhardt*, 518 F. Supp. 3d 535, 538–39 (D.D.C. 2021). It would be illogical for the Court to be "confined to the administrative record" in determining claims 3 and 4, while engaging in "*de novo*, extra-record review to assess" claims 1 and 2. *See id.* Indeed, applying this reasoning, courts in this District have twice rejected these same Plaintiffs' record supplementation requests for claims involving BLM's alleged failure to prepare HMAPs. *See Leigh v. Raby,* No. 3:22-cv-00034-MMD-CLB, 2023 WL 2717327, at *3 (D. Nev. Mar. 30, 2023) (*Leigh I*) (favorably citing *Dallas Safari Club* and rejecting Plaintiffs' "arguments for expansion of the [record] based on their contention that BLM should have prepared an HMAP, regardless of what claim they divide

---

[6] Plaintiffs' first claim is pled under the Mandamus Act. The Ninth Circuit has recognized that these claims are essentially "the same," and thus it is proper to analyze Mandamus Act claims "under the APA when there is an adequate remedy under the APA*." R.T. Vanderbilt Co. v. Babbitt*, 113 F.3d 1061, 1065 (9th Cir. 1997). Thus, Plaintiffs first claim is superfluous given their second claim under Section 706(1).

those arguments into"); *Leigh v. U.S. Dep't of the Interior*, Case No. 2:22-cv-01200-MMD-BNW, ECF No. 47 at 5–6 (D. Nev. Sept. 22, 2023) (*Leigh II*) (same). This Court should come to the same conclusion.

Moreover, Plaintiffs' theory that supplementation for their Section 706(1) claim is warranted conflicts with the APA. Section 706 provides that a reviewing court may (1) "compel agency action unlawfully withheld or unreasonably delayed" or (2) "hold unlawful and set aside agency action" for various enumerated reasons, and that "in making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party[.]" 5 U.S.C. § 706. "Nothing in the statutory text distinguishes the scope of record review based on whether the claim is directed at agency action or inaction." *Dallas Safari Club*, 518 F. Supp. 3d at 539.

More broadly, Plaintiffs' failure to act claims primarily raise issues of law, not factual ones for which supplementation could be warranted. Plaintiffs allege that BLM violated mandatory duties by not updating the Stone Cabin HMAP, preparing an HMAP for the Saulsbury HMAP, or "achiev[ing] the objectives" of the Stone Cabin HMAP, prior to issuing the Stone Cabin Gather EA. *See* ECF No. 1 ¶¶ 88, 90. There is no dispute that BLM did not take the first two actions. *See* SC_6188 ("BLM has not issued an updated [HMAP] document for the Stone Cabin or Saulsbury HMAs since the 1983 Stone Cabin Valley [HMAP].").[7] Rather, there is a dispute only as to whether BLM was legally required take them prior to issuing the Stone Cabin Gather EA. As the *Leigh I* and *II* courts observed when denying Plaintiffs' similar supplementation requests: "The Court does not need to order expansion of the [record] to make a merits determination as to whether Defendants had to prepare a HMAP before conducting the gather—the Court must simply make a call on the law." *Leigh I*, 2023 WL 2717327, at *3; *see Leigh II*, ECF No. 47 at 4 (same). Thus, Plaintiffs' arguments for supplementation as to BLM's failure to prepare an HMAP for Saulsbury HMA, or update the Stone Cabin HMAP, "do not carry Plaintiffs' 'heavy burden to show that the additional materials sought are necessary to adequately

---

[7] While BLM has not formally updated the Stone Cabin HMAP, BLM has updated its objectives through other means, including, but not limited to, the Tonopah RMP. *See* ECF No. 18 ¶ 53.

review' Defendants' decision." *Leigh I*, 2023 WL 2717327, at *3 (citation omitted). For this reason, the Court should deny Plaintiffs' broad requests for "documents related to BLM's decision[s]" on these issues. ECF No. 27 at 21.

There is a dispute over Plaintiffs' assertion that BLM has delayed its "duty" to "achieve the objectives" in the Stone Cabin HMAP. ECF No. 1 ¶ 90. But this is a legally defective claim the Court can reject without supplementation.[8] Either way, as explained below, there are sufficient documents in the record demonstrating BLM's work related to the goals expressed in the HMAP. And Plaintiffs are free to argue that the alleged lack of some specific item in the record "violates" the Stone Cabin HMAP, and the Court can decide that legal issue on the record before it. But the mere fact that Plaintiffs have a Section 706(1) claim does not meet their burden to show additional materials are necessary for the Court to adequately review their claim. Thus, the Court should reject Plaintiffs' broad request for "[a]ll documents related to BLM's decision" to allegedly not undertake studies or assessments under the Stone Cabin HMAP. ECF No. 27 at 21.[9] Likewise, the Court should reject Plaintiffs' unfettered demand for supplementation with "studies and assessments" they claim were "mandated" by the Stone Cabin HMAP. *Id.* at 17–19.

Moreover, the cases Plaintiffs cite for the idea that they can expand the record based on

---

[8] "[P]rojections of agency action set forth" in planning documents—such as the Stone Cabin HMAP—"are not [] legally binding commitment[s] enforceable under § 706(1)." *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 71 (2004) (explaining that "allowing general enforcement of plan terms would lead to pervasive interference with BLM's own ordering of priorities"). Plaintiffs cite *Friends of Animals v. Sparks* and claim that they can compel BLM to "comply" with the Stone Cabin HMAP because BLM issued a Record of Decision ("ROD"). *See, e.g.*, ECF No. 27 at 6. But *Sparks* did not involve compelling agency action under Section 706(1). *See* 200 F. Supp. 3d 1114, 1124 (D. Mont. 2016). And the court distinguished *Norton* because the commitment at issue was specific and discrete—recalculating AML in five years—and was made in the ROD itself, not the HMAP. *Id.* at 112. Plaintiffs point to no similarly specific commitment in the ROD here, which merely states that the proposed action—to "implement the management objectives" of the Stone Cabin HMAP—was "accepted." *See* SC_9319–21.

[9] Plaintiffs request documents related to BLM's supposed "decision" to update the Stone Cabin HMAP in "2016-2017" when Plaintiff Laura Leigh volunteered with BLM. ECF No. 27 at 21. But Federal Defendants have already explained to Plaintiffs that no such documents exist because BLM did not plan or begin to formally update the Stone Cabin HMAP in 2016-2017, and Ms. Leigh did not work on such a non-existent effort during her brief stint as a volunteer. Ex. 2 at 2.

their failure to act claims are distinguishable. ECF No. 27 at 21. For example, in *San Francisco BayKeeper v. Whitman*, the court held that review is in some cases not limited to the record in resolving failure to act claims because "when a court is asked to review agency inaction before the agency has made a final decision, there is often no official statement of the agency's justification for its actions or inactions." 297 F.3d 877, 886 (9th Cir. 2002). In contrast, here the Court has a final agency action to review—the Stone Cabin Gather EA—and supporting record. *See Leigh II*, ECF No. 47 at 5 (noting supplementation for Section 706(1) claims appropriate only if judicial review is "difficult—if not impossible—because the action's inaction left such little of a record to review"). Again, it is undisputed that BLM has not formally updated the Stone Cabin HMAP or issued a Saulsbury HMAP, and if BLM must "achieve" objectives from the Stone Cabin HMAP, this can be decided on the existing record. Likewise, in *Bundorf v. Jewell*, the court allowed plaintiffs to supplement the record with two expert declarations to explain technical terms and to identify scientific gaps in analysis, which are nothing like the broad categories of documents Plaintiffs seek to admit. *See* 142 F. Supp. 3d 1138, 1145–48 (D. Nev. 2015).[10]

Finally, Plaintiffs claim that supplementation is warranted because the documents they seek would bear on "whether or not BLM's decisions and delay have been reasonable." ECF No. 27 at 21. Plaintiffs cite no authority for the principle that the open-ended supplementation they seek is warranted to assess whether an agency's alleged inaction was "reasonable." In fact, the *Leigh I* court assessed whether BLM's alleged delay in issuing an HMAP was reasonable without referring to any extra-record materials. *See Leigh v. Raby*, No. 3:22-CV-00034-MMD-CLB, 2024 WL 1345297, at *6 (D. Nev. Mar. 28, 2024).

---

[10] Plaintiffs also cite *Sierra Club v. U.S. Department of Transportation*, 245 F. Supp. 2d 1109, 1119 (D. Nev. 2003) and argue they can obtain "discovery" on their failure to act claims. ECF No. 27 at 21. While Federal Defendants do not concede discovery is appropriate on these claims, the Court need not reach that issue. Plaintiffs agreed in the Joint Case Management Report that this case will be decided on "BLM's administrative record," disclaimed any intent "to seek discovery," and acknowledged that "leave of the Court" would be required if they changed their mind. *See* ECF No. 21 at 5. Plaintiffs have not sought such leave and the Court should not grant it through Plaintiffs' open-ended motion to complete or supplement the administrative record.

Thus, the Court should reject Plaintiffs' argument that they are entitled to broad supplementation of the record based on their failure to act claims.

### ii. Plaintiffs Fail to Show the Record Should Be Supplemented or Completed to Include Any Documents Referenced by the Stone Cabin HMAP.

Aside from broadly demanding supplementation because they plead a Section 706(1) claim, Plaintiffs argue that an array of documents should be included in the record because they are "referenced within the" Stone Cabin HMAP and "necessary to understand the plan's objectives and directives." ECF No. 27 at 14–15.

As a threshold matter, while Plaintiffs seek only to "supplement" the record with these documents, *id.* at 15, any implied argument for completion of the record fails. Plaintiffs have not even tried to show that BLM considered these documents in rendering the Stone Cabin Gather EA, much less marshal "clear evidence" to support such a claim. *Safari Club*, 2016 WL 7785452, at *2; *see Pinnacle Armor, Inc. v. United* States, 923 F. Supp. 2d 1226, 1239 (E.D. Cal. 2013) ("Plaintiff must identify reasonable, non-speculative grounds for its belief that the documents were considered by the decision-makers involved in the determination." (cleaned up)). And, as explained above, that the Stone Cabin HMAP cites or references a document is not a basis for completion. *Stevens*, 2023 WL 2138347, at *2; *Marcum*, 751 F. Supp. 2d at 80–81. Moreover, by asking for documents, plans, and manuals referenced in the HMAP, Plaintiffs essentially seek BLM's record for the Stone Cabin HMAP. But Plaintiffs have not challenged the Stone Cabin HMAP—such a challenge would almost certainly be barred by the statute of limitations. By broadly requesting documents related to the Stone Cabin HMAP, Plaintiffs are trying to circumvent this bar.

Additionally, that Plaintiffs seek these documents to "understand" what the Stone Cabin HMAP supposedly requires shows the futility of their Section 706(1) claim. ECF No. 27 at 15. Not only are they asking the Court to force BLM to "achieve" the objectives in a 41-year-old planning document, but they believe the Court must review a host of *other* plans, manuals, and studies to elucidate those objectives. This clarifies that what Plaintiffs seek is for the Court to

improperly superintend BLM's day-to-day management of wild horses in the Stone Cabin Complex, not enforce a discrete, legally enforceable obligation. *See Norton*, 542 U.S. at 71.[11] Regardless, Plaintiffs fail to meet their burden for supplementation with any of these documents.

Plaintiffs first ask for supplementation with Coordinated Resource Management and Planning ("CRMP") "recommendations" referenced in the Stone Cabin HMAP. ECF No. 27 at 15–16; SC_09273. Plaintiffs' only argument for supplementation is that they need these "recommendations" to "understand" the "constraints and assumptions" placed on "gather operations." ECF No. 27 at 15–16. But the Stone Cabin HMAP identifies the relevant "CRMP recommendations." *See* SC_09284 (explaining "BLM planning and CRMP recommendations" relate to horse population, livestock numbers, available water for grazing, and forage improvement). And the Tonopah RMP explains the CRMP process in detail. *See* SC_0143–44. If Plaintiffs wish to argue that BLM disregarded these recommendations in rendering the Stone Cabin Gather EA, they can do so on the existing record. *See Oceana*, 2017 WL 2670733, at *7. Given this, and that Plaintiffs do not explain which of the four-exceptions to record review they contend applies, they fail to show supplementation with the "recommendations" is required.[12]

Next, Plaintiffs ask the Court to supplement the record with a host of plans, manuals, and handbooks cited in the Stone Cabin HMAP: the Stone Cabin Valley Monitoring Plan, the Stone Cabin Valley Range Plan, the Stone Cabin Allotment Monitoring Plan, the Nevada Range Monitoring Procedures Handbook (1981), BLM Handbook 4412/4412.22, and the Nevada State

---

[11] Indeed, the Supreme Court has expressly rejected use of Section 706(1) to compel compliance with general objectives because it would inject courts "into day-to-day agency management" over questions such as whether the Secretary of the Interior is "manag[ing] wild free-roaming horses and burros in a manner that is designed to achieve and maintain a thriving natural ecological balance." *See Norton*, 542 U.S. at 66–67 (quoting 16 U.S.C. § 1333(a).) In any event, rather than subject BLM to broad, discovery-like demands so that Plaintiffs can fish for documents, if the Court decides it needs more information or explanation to decide whether BLM has not "achieved" the Stone Cabin HMAP's objectives, the Court can request and "obtain this from the agency" as appropriate. *See Camp v. Pitts*, 411 U.S. 138, 143 (1973).

[12] If Plaintiffs seek admission of this and other documents under the "relevant factors" exception on the basis that BLM should have considered them in rendering the Stone Cabin Gather EA, courts have rejected this theory. *See Safari Club*, 2016 WL 7785452, at *5 (collecting cases).

Office Manual Supplement 4730. ECF No. 27 at 16–17. Plaintiffs simply quote from portions of the Stone Cabin HMAP that mention these documents and claim that they "establish BLM's obligations and address whether the Gather EA conformed to them." *Id.* Again, if Plaintiffs wish to argue that BLM was required to consider these documents in rendering the Stone Cabin Gather EA, they can point to their absence in the lodged record. Nor do Plaintiffs identify which of the four record-review exceptions they seek to have these documents come in under, much less do they meet their heavy burden to show supplementation is required for the judicial review. Plaintiffs' claim to compel BLM to "achieve" the Stone Cabin HMAP's broad objectives is already flawed—compelling BLM to search for and produce every manual and other plan referenced to help Plaintiffs "understand" the objectives would be absurd and contrary to record-review principles.

Plaintiffs also claim that the Stone Cabin HMAP mandates several "studies and assessments" and essentially propound discovery requests on BLM to produce documents related to them. *See* ECF No. 27 at 17–19; *see also id.* at 15 (seeking production of "any evidence that BLM actually conducted the numerous assessments and studies"). Plaintiffs' broad requests flout the "strictly construed" exceptions to record review which allow supplementation of the record only in limited circumstances. *See Lands Council*, 395 F.3d at 1030. And if Plaintiffs wish to argue that BLM did not undertake some study or assessment that they think is mandated by the Stone Cabin HMAP, they can make that argument on the existing record. Additionally, the lodged record is sufficient for judicial review on this point, as it already reflects that BLM has acted and continues to act consistent with the broad "Wild Horse Management Objectives" from the Stone Cabin HMAP, and has done studies, monitoring, and assessments addressing the issues that Plaintiffs identify.

For example, Objective 1 relates to setting AML; as explained, the Tonopah RMP re-affirmed AMLs for the Stone Cabin Complex, and it is in the record. *See* SC_9285; SC_0001–0193. Objective 2 relates to monitoring of range use and the availability of "key" forage. *See* SC_9285. The Stone Cabin Gather EA found that "[m]oderate and heavy utilization is evident on

key forage species within the complex . . . which, if sustained over time, interferes with vegetative regrowth and results in long term changes to rangeland health due to the loss of native vegetation." SC_6189; *see also* SC_6271–6274 (Appendix II, summarizing detailed vegetation and range utilization data and monitoring); SC_0663–1449 (monitoring data from 2012–2022 including water inventories, flights to count wild horses, and rangeland monitoring). Objective 3 broadly relates to maintaining the "wild free roaming characteristics" of horses, and generally calls for assessment of impacts to horses for "projects proposed" in the Stone Cabin HMA. SC_9286, SC_9290. The Stone Cabin Gather EA—like all gather plan assessments—analyzes the potential effects to horses, including cumulative impacts, which Plaintiffs call out as "required" by the HMAP. *See* ECF No. 27 at 18; SC_6213–6230 (assessing in detail possible effects, and cumulative effects, to horses from proposed gather plan and alternatives). Additionally, Objective 4 relates to provision of water for wild horses "where possible," SC_9291, and the record contains over a hundred pages of water inventory data for the Stone Cabin Complex, SC_0633–0766.

Finally, Objective 5 relates to "acquir[ing] additional data on wild horses." SC_9291–92. BLM did extensive monitoring and data collection related to the wild horse populations as part of rendering the Stone Cabin Gather EA. SC_0663–1449. Plaintiffs specifically seek information on population counts, movement between herds, habitat and vegetation conditions, and genetics. ECF No. 27 at 18. Information on each of these topics is in the Stone Cabin Gather EA and the record. *See* SC_0767, SC_0829, SC_1006, SC_1038, SC_1065, SC_1262, SC_1305 (population counts); SC_1287–1300 (field report outlining "wild horse resource conditions" including water sources, horse body conditions, and range conditions); SC_6213–17 (outlining water use and drought conditions, rangeland resources including habitat and vegetation conditions, population counts, and genetic monitoring, which reflects movement between herds); SC_6218–23 (analyzing "use of contraception and sex ratio skewing"). By ignoring the exhaustive information already in the lodged record related to these objectives, Plaintiffs fail to make their threshold showing that the record is inadequate. *See Oceana*, 2017 WL 2670733, at *7.

In sum, Plaintiffs have failed to show it is necessary to supplement (or complete) the record with any materials related to HMAPs.

### D. Plaintiffs Fail to Show that Completion or Supplementation of the Record to Include Additional Tonopah RMP-Related Documents is Warranted.

Plaintiffs next argue that they "need documents referenced" in the Tonopah RMP and "assessments or studies conducted pursuant to the RMP" to "demonstrate that BLM's Gather EA did not conform to the Ton[o]pah RMP and to establish what obligations BLM was legally committed to." ECF No. 27 at 19.

Again, Plaintiffs misunderstand their claims. The only final agency action they challenge is the Stone Cabin Gather EA, ECF No. 1 ¶ 1, which conforms to the objectives of the Tonopah RMP. *See* SC_6189–90. Plaintiffs have no claims challenging the Tonopah RMP (which almost certainly would be time barred), nor do they have claims to compel BLM to meet alleged "commitments" in the Tonopah RMP. *Compare id.* at 19, *with id.* at 8–9 (Plaintiffs' description of their claims).

As for completion of the record with the "documents referenced" in the Tonopah RMP— the 1994 Nevada Rangeland Monitoring Handbook, BLM Technical Guides, and Nevada Grazing Management Manual Supplement H-4120-1—Plaintiffs do not even try to show that BLM directly or indirectly relied on them for the Stone Cabin Gather EA. And again, that a record document cites another document is an invalid argument for completion. *See Stevens*, 2023 WL 2138347, at *2. Thus, any argument for completion of the record with these documents fails. Supplementation with these materials is also not warranted. Plaintiffs do not make clear which of the four exceptions they seek to have the Court consider these documents under. *Lands Council*, 395 F.3d at 1030. But if Plaintiffs want to argue that BLM did not "conform" to the Tonopah RMP by not considering the documents they cite, Plaintiffs can make this argument on the existing record. Thus, they fail to meet their heavy burden to show supplementation of the record is required for judicial review. *Fence Creek*, 602 F.3d at 1131.

Likewise, Plaintiffs' broad request for supplementation with "monitoring studies"

conducted under the Tonopah RMP should be denied. ECF No. 27 at 20. To be clear, the Stone Cabin Gather EA was done pursuant to the Tonopah RMP, so the monitoring included in the lodged record was done to "achieve the objectives for wild horse management" in the Tonopah RMP. *See id.* at 20; SC_6185. Regardless, Plaintiffs again do not spell out which of the four record-review exceptions they think this amorphous category of documents falls under. But if there is a study or assessment Plaintiffs think BLM needed to conduct before issuing the Stone Cabin Gather EA, they can make that argument on the existing record. Thus, again, Plaintiffs fail to meet their heavy burden to show that supplementation of the record is needed for judicial review. *Fence Creek*, 602 F.3d at 1131.

Accordingly, the Court should deny Plaintiffs' requests to complete or supplement the record with materials related to the Tonopah RMP.

### E.  Plaintiffs' Alternative Request for Judicial Notice Should Be Denied.

Finally, Plaintiffs ask the Court to take judicial notice of any documents the Court rules should not be added to the record via completion or supplementation. ECF No. 27 at 21–22. Plaintiffs cite nothing in support of this conclusory argument, which is contrary to the rule that they "cannot circumvent the rules governing administrative record supplementation by asking for judicial notice." *Delgadillo*, 2022 WL 301548, at *1 (collecting cases); *see also All. for the Wild Rockies*, 412 F. Supp. 3d at 1198. Indeed, a court in this District recently rejected a similar request on these grounds. *See Bartell Ranch*, 2021 WL 6118738, at *2 (declining to take judicial notice of documents parties sought "added to the record" through completion or supplementation). Plaintiffs' request should also be denied because, as explained above, none of the extra-record documents they seek are relevant to the merits of their claims. *See City of Sausalito v. O'Neill*, 386 F.3d 1186, 1223 n.2 (9th Cir. 2004) (declining to take judicial notice where the proffered evidence would "have no legal significance" in the case).

Second, Plaintiffs ask the Court to take judicial notice of various Federal regulations and rules. ECF No. 27 at 21–22. Plaintiffs' request is unnecessary and should be denied. Plaintiffs may cite, and the Court may consider, legal authority without resort to Rule 201. *See, e.g.*, *Moore*

*v. Palmer*, No. 22-CV-539 JLS (LR), 2023 WL 2593964, at *3 (S.D. Cal. Mar. 20, 2023) (denying request for judicial notice of legal authority and collecting cases); *Eruchalu v. US Bank Nat. Ass'n*, No. 2:15-CV-946 JCM, 2015 WL 3609909, at *2 (D. Nev. June 9, 2015) (finding request for "judicial notice of certain evidentiary rules, statutes, and case law" to be "unnecessary").

Thus, Plaintiffs' request for judicial notice should be denied as improper and unnecessary.

## V.     **CONCLUSION**

For these reasons, the Court should deny Plaintiffs' Motion.

Dated: July 3, 2024

Respectfully submitted,
TODD KIM, Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

*/s/ Joseph W. Crusham*
JOSEPH W. CRUSHAM,
Trial Attorney (CA Bar No. 324764)
Wildlife & Marine Resources Section
YOUNG A. KANG
Trial Attorney (FL Bar No. 1025505)
Natural Resources Section
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044-7611
Phone: (202) 307-1145 (Crusham)
Email: joseph.crusham@usdoj.gov
Phone: (202) 514-2415 (Kang)
Email: young.kang@usdoj.gov

*Attorneys for Federal Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 3, 2024, I filed the foregoing electronically through the CM/ECF system, which caused all parties or counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

*/s/ Joseph W. Crusham*
Joseph W. Crusham
U.S. Department of Justice